# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JIMMY W. SHARP,<br><br>                             Plaintiff,<br><br>   vs.<br><br><br>PATRICK R. DONAHOE, Postmaster<br>General U.S. Postal Dept.,<br><br>                       Defendant. | CASE NO. 11cv1433-LAB (NLS)<br><br>**ORDER DEEMING COMPLAINT AMENDED;**<br><br>**ORDER DENYING MOTION FOR SUMMARY JUDGMENT; AND**<br><br>**ORDER CONTINUING PRETRIAL CONFERENCE** |

After exhausting his administrative remedies by filing EEOC complaints that were dismissed, Plaintiff Jimmy Sharp filed this action for employment discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*

Sharp, an African-American man employed by the U.S. Postal Service, alleges he was not given an opportunity to apply for three work details, which eventually were given to three non-African-American women.  He alleges the supervisors' motives in not giving him an opportunity to apply for these positions was discriminatory, based on his race and sex.

**AMENDMENT OF COMPLAINT TO NAME PROPER DEFENDANT**

The complaint initially named John E. Potter, Postmaster General, as Defendant, but Patrick R. Donahoe has held that position since the initiation of this action. Both parties list Donahoe's name in the caption as Defendant. Fed. R. Civ. P. 25(d), strictly speaking, does

1    not apply here because Potter never held the position of Postmaster General during the

2    pendency of this action. But in keeping with the purpose of that provision, and because the

3    parties do not dispute that Donahoe is the proper Defendant, the complaint is **DEEMED**

4    **AMENDED** to substitute Patrick R. Donahoe as Defendant.

5    **MOTION FOR SUMMARY JUDGMENT**

6         Donahoe has moved for summary judgment. arguing that Sharp was not asked to

7    apply for the details and the three employees were selected for the details, all for

8    nondiscriminatory reasons. Donahoe offers evidence in support of these contentions.

9         **Legal Standards**

10        Summary judgment is appropriate where "there is no genuine issue as to any material

11   fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P.

12   56(c). It is the moving party's burden to show there is no factual issue for trial. *Celotex Corp.*

13   *v. Catrett*, 477 U.S. 317, 323 (1986). To meet this burden, it must show that the non-moving

14   party lacks any evidence to support its claims. *Id*. at 325. And if it can make that showing,

15   the non-moving party must respond with "specific facts" to show there is a genuine issue for

16   trial. *Id*. at 324.

17        The Court considers the record as a whole and draws all reasonable inferences in the

18   light most favorable to the non-moving party. *Fairbank v. Wunderman Cato Johnson*, 212

19   F.3d 528, 531 (9th Cir. 2000). The Court does not make credibility determinations or weigh

20   conflicting evidence. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986). Rather, the

21   Court determines whether the record "presents a sufficient disagreement to require

22   submission to a jury or whether it is so one-sided that one party must prevail as a matter of

23   law." *Id*. at 251–52. A mere scintilla of evidence is not sufficient to withstand summary

24   judgment. *Int'l Church of Foursquare Gospel v. City of San Leandro*, 673 F.3d 1059, 1068

25   (9th Cir. 2011) (quoting *Anderson*, 477 U.S. at 252).  Not all alleged factual disputes will serve

26   to forestall summary judgment; they must be both material and genuine. *Id*. at 247–49.

27        Inadmissible evidence is not considered when ruling on a motion for summary

28   judgment. See Fed. R. Civ. P. 56(e); *Beyene v. Coleman Sec. Services, Inc*., 854 F.2d 1179,

1   1181–82 (9th Cir.1988). Nor may a party resist summary judgment by relying on mere

2   allegations or denials of the moving party's evidence. *Anderson*, 477 U.S. at 248.

3        To establish a prima facie case of discrimination, Sharp must demonstrate (1) that he

4   belongs to a protected class; (2) that he performed his job satisfactorily; (3) that he suffered

5   an adverse employment action; and (4) that his employer treated him differently than a

6   similarly situated employee who does not belong to the same protected class as he does.

7   *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  *See also Surrell v. Calif.*

8   *Water Serv. Co.*, 518 F.3d 1097, 1105 (9th Cir. 2008) ("Typically, we apply the familiar

9   *McDonnell Douglas* burden shifting framework for Title VII . . . claims.")[1] If a plaintiff

10  establishes a prima facie case, the burden of production (not persuasion) shifts to the

11  defendant to offer a legitimate, nondiscriminatory reason for its action. *McDonnell Douglas*,

12  411 U.S. at 802.

13       In *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000), the

14  Supreme Court held that, once the plaintiff had made out a prima facie case, the factfinder

15  could infer intentional discrimination without additional proof if the factfinder found the

16  employer's proffered nondiscriminatory reasons not credible. But even after *Reeves*, "at the

17  summary judgment stage, a plaintiff may raise a genuine issue of material fact as to pretext

18  via (1) direct evidence of the employer's discriminatory motive or (2) indirect evidence that

19  undermines the credibility of the employer's articulated reasons." *Noyes v. Kelly Servs.*, 488

20  F.3d 1163, 1170–71 (9th Cir. 2007) (citation omitted). In other words, if the Postmastert

21  proffers nondiscriminatory reasons, Sharp must adduce evidence showing those reasons

22  are pretextual. *See Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008). If Sharp

23  makes out a  prima facie case and shows sufficient reason to disbelieve the employer's

24  explanation, summary judgment must be denied. *See Reeves*, 530 U.S. at 140.

25  / / /

26  / / /

27  _____

28       [1] Alternatively, Sharp could proceed by producing "direct or circumstantial evidence
    that a discriminatory reason more likely than not motivated the employer." *McDonnell
    Douglas*, 411 U.S. at 931. He relies on the familiar burden-shifting framework, however.

**Factual Background**

The following background facts are undisputed, except where a source is noted. While the Court has in some instances cited only evidence favorable to Sharp, it has considered all evidence the parties have cited. *See Reeves*, 530 U.S. at 149–150 (while court reviews the entire record, it resolves all evidentiary conflicts in nonmoving party's favor).

Sharp has been employed by the postal service since 1981. Since 2001, he has been a Level 7 Time and Attendance ("TACS") clerk. He is competent in this position and has always received positive performance evaluation. He was written up once, in June of 2008, for failing to read emails promptly.

A "detail," such as those Sharp applied for, is "the opportunity to work in a position, learn it through training, and then perhaps apply for that position if it becomes available." (Sharp Decl. in Opp'n to Mot. for Summ. J. (Sharp Decl.), ¶ 5.) Details do not arise predictably or regularly, and are generally filled quickly and informally. One of the three details Sharp thinks he should have been considered for carried a higher salary than his current position. (*Id*.) On April 10, 2008, Sharp emailed his supervisors expressing interest in any training that would prepare him for management opportunities in the future. (*Id*., ¶ 7.) He also asked them for consideration. (*Id*., ¶ 8.)

In late September, 2008, three details opened up and were filled without the openings being announced or Sharp being told. The managers making the hiring decisions knew Sharp was an African-American man, and each of the details was filled by a non-African-American woman. Sharp argues he was more qualified for each of these positions, based on his experience, education, and training. The Postmaster offers evidence of the managers' legitimate, non-discriminatory reasons for hiring others besides Sharp. These include the need to fill the positions quickly; and the successful applicants' expressed interest in the particular positions as well as (in the managers' views) their superior qualifications and personal characteristics. The Postmaster also points to evidence Sharp had recently been written up for failing to respond to emails, resulting in his being slow to carry out his duties;

1  that he was criticized by managers for being difficult to work with; and that he was inflexible

2  and had a poor attitude. They also point out that one manager, Donna Rodgers, was herself

3  African-American.

4       Sharp also cites a matrix developed by the EEOC's independent investigator. (Sharp

5  Decl., ¶ 13 (citing Ex. E).) The matrix identifies itself as being based, in part on Sharp's own

6  testimony. The matrix identifies eleven positions and who filled them. Two of the positions

7  were filled by men, which could undercut Sharp's sex-based claims. But it doesn't include

8  a time frame, and the Postmaster doesn't comment on it, so it isn't clear when the positions

9  identified in the matrix were offered and filled, and other details are also lacking. Neither

10  party has anything to say about the demographics of the relevant pool, leaving it an open

11  question whether the matrix generally tracks those demographics or whether departs from

12  them, potentially suggesting a pattern of discrimination.

13      **Discussion**

14      Although Sharp's briefing characterizes a detail as a promotion,[2] the evidence

15  unanimously points to it not being a promotion in itself; the employee on a detail does not

16  leave his or her own position, but only temporarily takes on the job duties of another

17  employee. (*See* Sharp Decl., ¶ 5; Motion for Summ. J. (Mot.), 2:26–27 (citing evidence

18  showing a detail is a temporary position).) It represents an opportunity to gain training and

19  experience, may lead to opportunities for advancement, and may temporarily entitle the

20  employee to higher pay.  (Sharp Decl., ¶ 5. (detail may improve chances for a promotion);

21  Mot., 2:26–27 (citing evidence showing a detail is a temporary position).)

22      Viewing the evidence in the light most favorable to Sharp, he is able to demonstrate

23  (1) that he belongs to protected classes (African-American, male); (2) that he performed his

24  job satisfactorily; (3) that he suffered an adverse employment action (*i.e.*, not being allowed

25

26      [2] Sharp cites ELM 351.51, from the post office's Employment and Labor Relations
    Manual, (Opp'n, Ex. D), which he argues requires that details be announced and filled by
27  means of a uniform process. But this regulation addresses promotions, and the evidence
    presented here shows that a detail is not a promotion. The Postmaster cites the Assignment,
28  Reassignment, and Promotion Handbook EL-312 716 *et seq.*, a section dealing with
    temporary assignments, which shows a detail is not filled subject to the same requirements
    as is a promotion.

1    to apply for details and not being considered for them); and (4) that his employer treated him
2    differently than similarly situated employees who do not belong to the same protected
3    classes as he does. Thus, he has made out a prima facie case. *See McDonnell Douglas*,
4    411 U.S. at 802. Of course, the Postmaster points to conflicting evidence, but at this stage,
5    the Court does not resolve such conflicts or weigh the evidence. *Anderson*, 477 U.S. at 255.

6         Donna Rodgers, a supervisor, was responsible for both reprimanding Sharp for his
7    job performance, and also designating the employee who would fill one of the details. That
8    she is of the same race as Sharp does not preclude a Title VII racial discrimination claim
9    against the employer, *see Billingsley v. Jefferson County*, 953 F.2d 1351, 1353 (11th Cir.
10   1992), though it does undercut Sharp's race-based claims. *See Udoewa v. Plus4 Credit*
11   *Union*, 754 F. Supp. 2d 850, 873 (S.D.Tex. 2010). Similarly, the fact that Jon Bigornia, a
12   supervisor who designated an employee to fill a second position, is male does not preclude
13   Sharp's sex-based discrimination claims, though it does undercut them.

14        The Postmaster musters evidence explaining why others were selected and Sharp
15   was not (Mot., 3:26–6:22), and also offers evidence that Sharp was detailed into the position
16   of TACS Specialist seven times from November, 2004 to September, 2007, (Mot., 6:2–6),
17   which Sharp does not dispute. (Sharp Decl.., ¶ 4.) While the Postmaster implies, based on
18   this history, that no one was discriminating against Sharp earlier, Sharp relies on the same
19   evidence to show he was better qualified for additional the details. (*Id*.,¶¶ 4, 10.) The
20   Postmaster offers evidence Sharp turned down a supervisory warehouse position (Rodgers
21   Decl., ¶ 11), but Sharp's declaration contradicts this. (*Id*., ¶ 15.)

22        The Postmaster has met its burden of showing legitimate, nondiscriminatory reasons
23   for the decisions not to tell Sharp about the three details or select him for them. The burden
24   now falls on Sharp to show either (1) direct evidence of the employer's discriminatory motive
25   or (2) indirect evidence that undermines the credibility of the employer's articulated reasons."
26   *Noyes,* 488 F.3d at1170–71. He has no direct evidence, but he has pointed to indirect
27   evidence.
28   / / /

First, Sharp points to evidence he is well qualified and has been detailed in the TACS Specialist position numerous times. If a jury believed this evidence, and disbelieved the Postmaster's, it could conclude there was some reason other than the employees' experience that others were told about the details, considered for them, and given them.

While the Postmaster correctly points out the email only requested training, rather than a detail assignment generally, a detail provides some opportunity for learning new skills. And besides the email, Sharp offers evidence he mentioned to two supervisors numerous times that he was interested in higher level details. (Sharp Decl., ¶ 6.)[3] Relying on this evidence, a factfinder could determine that supervisors knew Sharp was interested in detail assignments, but avoided telling him about openings.

Sharp also points out facts suggesting that the reprimand in June of 2008 was not as serious as the Postmaster now claims. The documentary evidence shows Sharp was talked to about failing to respond to emails, but it could be taken in two ways. Exhibit G is a short list of employer expectations, which Sharp acknowledged with his signature, about how he would deal with the email problem. Exhibit H is notes from an investigative interview concerning the email problem. Both exhibits document that there was a problem, and a serious enough problem to warrant intervention, and Exhibit H says "Jimmy was told this was a last chance. He has been spoken to 3 or 4 times before . . . ." This evidence weighs against Sharp's characterization of the discipline as minor relative to his long and generally problem-free career. At the same time, Exhibit H records "No discipline at this time." Also in Sharp's favor is the fact that there is no evidence of follow-up after July 16, 2008. The passage of a few months' time could support Sharp's argument that the reprimand was relatively minor.

Another factor in Sharp's favor is that there is a genuine conflict about whether he turned down an earlier detail opportunity that could have led to a permanent management

---

[3] The Postmaster cites Ex. J, Sharp's response to supplemental interrogatory 14, as evidence that Sharp admitted he had not requested a detail since 2003 or 2004. There are no dates in this response later than 2004, suggesting that the last time he mentioned it was in 2004. At the same time, the interrogatory does suggest they reached an understanding that he would be told of the possibility of detail assignments in the future.

position. The Postmaster offers Rodgers' declaration that he told a supervisor he wasn't interested in this detail, because it was "dirty work." (Mot., 6:7–13 (citing evidence).)  Sharp denies ever saying this. (Sharp Decl., ¶ 15.) Accepting Sharp's evidence as persuasive, a factfinder could conclude this represented the supervisors' efforts to cover up an illicit purpose. *See Reeves*, 530 U.S. at 147 (holding that if a factfinder rejects an employer's explanation, it may infer an illicit motive).

In *Reeves*, the Supreme Court made clear an employer could still prevail, even if a plaintiff made out a prima facie case. *Reeves*, 530 U.S. at 148 (discussing situations where summary judgment for an employer would still be appropriate). But after *Reeves*, that category of cases was reduced to those where, "although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory." *Id.*

Based on the entire record, the Court concludes that Sharp has offered some evidence from which a trier of fact could disbelieve the nondiscriminatory reasons, and on this basis conclude they were pretextual. The evidence for Sharp's claims does not appear particularly strong, but it is more than a scintilla.

**Conclusion and Order**

For these reasons, the motion for summary judgment is **DENIED**.

The pretrial conference, currently on calendar for Tuesday, April 2, 2013, is **CONTINUED** to <u>**Monday, April 22, 2013 at 12:00 noon**</u>.

**IT IS SO ORDERED**.

DATED:  March 26, 2013

**HONORABLE LARRY ALAN BURNS**
United States District Judge