# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JIMMY W. SHARP,<br><br>　　　　　Plaintiff,<br>　vs.<br><br>PATRICK DONAHOE, Postmaster General U.S. Postal Dept.,<br><br>　　　　　Defendant. | CASE NO. 11cv1433-LAB (NLS)<br><br>**ORDER GRANTING MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FED. R. CIV. P. 50** |

Plaintiff Jimmy Sharp, an African-American man, brought claims that his employer, the U.S. Postal Service, discriminated against him on the basis of his race, color, and gender, in violation of Title VII of the Civil Rights Act of 1964. Specifically, he complained that he was not chosen for three temporary "detail" positions in September of 2008. The details were not announced or advertised, but instead filled informally. He admits he never applied for them, but argues this is because he was not told about them. These positions carried a small increase in pay and some opportunity to learn new skills and perhaps advance.

Trial was held beginning June 26. At the close of Sharp's evidence, the Defense moved for judgment as a matter of law pursuant to Fed. R. Civ. P. 50, and the Court heard argument on the motion. The Defense argued Sharp had presented no evidence that

discrimination played any role in the three decision-makers' actions in choosing other candidates for the work details. When questioned, Sharp's counsel mentioned only Sharp's own testimony that he thought he was better-qualified for the details, and that none of the three employees ultimately chosen were African-American or male.[1] Sharp's counsel admitted Sharp had provided no evidence that any of the decision-makers acted out of prejudice based on race, color, or gender, but argued that this should not be held against him, because he could not know or testify to what the decision-makers were thinking.

The Court, having heard all Sharp's evidence, granted the motion, providing an explanation from the bench. This written order supplements that ruling with additional explanation and citation to authority.

**Legal Standard**

Rule 50 provides that court may declare judgment as a matter of law against a party who "has been fully heard on an issue during a jury trial [when] the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue . . . ." Judgment as a matter of law is appropriate when, taking the evidence as a whole and construing it in the light most favorable to the nonmoving party, a reasonable juror could reach only one conclusion. *Omega Envtl., Inc. v. Gilbarco, Inc.*, 127 F.3d 1157, 1161 (9th Cir. 1997) (applying the standard to a renewed motion for judgment as a matter of law); *Baker v. Delta Air Lines, Inc.*, 6 F.3d 632, 644 (9th Cir. 1993).  The court does not consider the weight of the evidence or the credibility of witnesses. *Id.* In an employment discrimination case, for which the usual Rule 50 standards apply, judgment as a matter of law is appropriate if there is "abundant and uncontroverted independent evidence that no discrimination occurred." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000) (citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 524 (1993)).  The Court should consider several factors in deciding a Rule 50 motion, including the "strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation

---

[1] The uncontroverted evidence was that, of the three women selected for these details, one was caucasian and two were Filipina.

is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." *Reeves* at 148–49.

**Discussion**

Sharp testified that he had been assigned to eight details in the past, one of which lasted seven months—the longest he was aware of at his location. In other words, he was repeatedly given the opportunity to serve on details. He admitted he had been admonished for failing to read and respond to emails, which was his primary duty at the time.[2] After the admonition, he was not given the three details at issue here.

Sharp testified that he was unaware of any race-, color-, or gender-based discriminatory motive by any decision-maker. He never experienced anything of that nature firsthand, and he couldn't identify anything he might have heard that suggested to him that these motives were at work in any fashion. Rather, he testified that he thought the three details were filled based on cronyism or nepotism; the decision-makers, he thought, gave the details to their friends instead of announcing them or inviting him to apply, even though he thought he was better qualified. While what he describes isn't a laudable motive, it doesn't give rise to a claim for race-, color-, or gender-based discrimination. *See U.S.E.E.O.C. v. Republic Servs., Inc.* 640 F. Supp. 2d 1267, 1314 (D.Nev. 2009) (quoting *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11th Cir. 1984)) (employment actions may permissibly be undertaken "for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason"). Sharp also repeatedly testified that he thought Defendant should have used objective testing to determine how to fill details, instead of allowing designated decision-makers to exercise discretion and rely on subjective criteria. Regardless of whether

/ / /

---

[2] Sharp testified that he misunderstood the importance of opening emails, rather than merely reading them in preview format. Other personnel offered testimony that, when he deleted previewed but unopened emails, senders received notifications saying their messages had not been read. On the stand, Sharp vacillated about whether he read all emails, in preview form or otherwise. But it is immaterial whether he really did read them, or whether supervisors were right in believing he had failed to read them. The key point here is that the supervisors' belief, whether well-founded or not, is a non-discriminatory reason.

he is right about that,[3] Title VII doesn't forbid employers to use subjective criteria, choosing employees they believe to be more motivated, conscientious, and interested in a particular opening.

While Sharp was presenting his evidence, the Defense elicited a good deal of testimony showing that the three decision-makers, Ms. Rodgers, Ms. Stoddard,[4] and Mr. Bigornia, acted for reasons other than impermissible discrimination. Rodgers and Bigornia testified, and explained that they had chosen others who seemed more qualified and motivated, and who had actively expressed interest in the details. The uncontroverted evidence also showed that decision-makers repeatedly selected both African-Americans and males for work details. Rodgers, in particular, had chosen Sharp several times for details.

While Sharp argued those selected for the details were less qualified than he was, there was no evidence they were unqualified. Both the decision-makers and Ms. Carmichael, who was selected for one of the three details, testified about their qualifications.

When the Court inquired of Sharp's counsel what evidence of race-, color-, or gender-based discrimination he had presented, he argued that Sharp couldn't testify as to anyone's state of mind, but merely pointed out that three women, none of whom was African-American, were selected for the three details. With regard to his first point, the fact that evidence of bias could not be found does not eliminate his burden of proof, or lower the legal

/ / /
/ / /
/ / /
/ / /

---

[3] Sharp had argued at the summary judgment stage that regulations required that details be posted and filled in a prescribed manner. Defendant disputed this, arguing that requirement applied to more formal openings, but not to temporary work details. Defendant also presented evidence that its established practice was to fill details informally, a practice that had benefitted Sharp in the past, when he was assigned eight such details. But such regulations are not the subject of his claims, and even assuming he could establish a violation of postal regulations, it wouldn't show Defendant violated Title VII.

[4] Ms. Stoddard is deceased, but how she had filled details in the past was the subject of testimony, and the other two decision-makers testified and gave their reasons for choosing other candidates.

standard. Instead, the absence of this type of evidence simply means Sharp would have to find some other way of proving his case.[5]

The only other evidence Sharp's counsel was able to point to was the fact that, of the three details, all went to women who were not African-Americans. While statistical evidence can help prove a discrimination case, this isn't statistical evidence. First, there was no attempt to show that the three details were representative in any way, or to put them in context so as to render them meaningful. It was uncontested, for example, that Sharp was given eight other details, there was no evidence of the total number of details Sharp applied for or was qualified for, and there was no evidence of the demographic makeup of Sharp's workplace. *See Valdez v. City of San Jose*, 2013 WL 752498, slip op. at *12 (N.D.Cal., Feb. 27, 2013) (citing *Gay v. Waiters & Dairy Lunchmen's Union*, 694 F.2d 531, 553 (9th Cir. 1982) (pointing out the necessity of proper statistical evidence and analysis in a Title VII case to prove intent to discriminate). Simply pointing to three details that Sharp didn't get, out of an unknown total of details for which an unknown number of people of unknown demographics were qualified for and applied for is nothing more than statistical cherry-picking, which isn't meaningful. *See Valdez* at *13–14 (holding that failure to show that statistical comparisons were appropriate, and failure to put them in any larger context, rendered the evidence insufficient to allow claims to survive summary judgment).

Another way to analyze the evidence is to use the burden-shifting analysis announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and relied on in *Reeves*, 530 U.S. at 142–43. Under this analysis, a plaintiff must first establish that he belongs to a protected class, that he was qualified for the position, that he applied for that position but was not given it, and that the position was filled by someone not in the protected class. *St. Mary's Honor Ctr.*, 509 U.S. at 506. The Court will assume, for the sake of analysis, that his

---

[5] Of course, the absence of any evidence at all is consistent with Defendant's position that no discrimination occurred. If the Court were to accept Sharp's position that a plaintiff who has failed to uncover evidence of discrimination is excused from presenting any, judgment as a matter of law would be impossible. Binding precedent makes clear that is not the case. *See Reeves*, 530 U.S. at 148 (holding that Title VII cases should not be insulated from Rule 50 review).

failure to apply for a detail not formally announced is not fatal to his claim. Defendant has met its burden of presenting evidence of non-discriminatory reasons for its decisions, as discussed above.

Under this analysis, Sharp was required to show that those reasons were mere pretext for prohibited discrimination. *See Reeves*, 530 U.S. at 143. At all times he bore the burden of persuasion. *See id*. To do so he was required to present evidence sufficient for the jury to conclude that the proffered reasons were not the true reasons, and that the real reason was illegal discrimination. *See id.* at 143, 148. Instead, on the witness stand he abandoned his belief that any of the decision-makers were motivated by illegal discriminatory motives, and testified that he thought they were motivated by favoritism towards their friends; and that they used subjective criteria to fill the details, rather than using the type of objective criteria he thought they should have used. But, as discussed, these are not illegal reasons for making employment decisions. Regardless of whether the jury agreed with Sharp or accepted Defendant's evidence, it could not have concluded based on the evidence presented that illegal discrimination occurred. In other words, even if the jury disbelieved Defendant's non-discriminatory explanation, the alternative explanation Sharp testified to was also nondiscriminatory. *See id.* at 148 (quoting *Fisher v. Vassar College*, 114 F.3d 1332, 1138 (2d Cir. 1997) ("[I]f the circumstances show that the defendant gave the false explanation to conceal something other than discrimination, the inference of discrimination will be weak or nonexistent"). Because there was abundant evidence of nondiscriminatory reasons for the decisions, and no evidence at all of any discriminatory reasons, *see Reeves* at 148, the inference of discrimination here is nonexistent.

**Conclusion and Order**

Sharp presented no evidence, on the basis of factors discussed in *Reeves*, 530 U.S. at 148–49, from which reasonable jurors could have concluded that illegal discrimination was the basis for Defendant's failure to assign Sharp to the three details in September of 2008.

On the basis of this analysis, the argument at trial, and the Court's discussion of the evidence from the bench, the Court finds Defendant is entitled to judgment as a matter of

Case 3:11-cv-01433-LAB-NLS   Document 34   Filed 07/03/13   PageID.309   Page 7 of 7

law. Defendant's Rule 50 motion is **GRANTED**. The Clerk is directed to enter judgment in favor of Defendant and against Plaintiff.

      **IT IS SO ORDERED**.

DATED: July 3, 2013

*[signature: Larry A. Burns]*

**HONORABLE LARRY ALAN BURNS**
United States District Judge